IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Horacio Vazquez,                    )
                                    )
        Plaintiff,                  )       Case No. ~~04 C 861~~
                                    )       04 C 1798
        v.                          )
                                    )       Hon. Mark Filip
Central States Joint Board, *et al.*, )
                                    )
        Defendants.                 )

MEMORANDUM OPINION AND ORDER

This case is before the Court on Defendants' motion to strike and suggestion of mootness. (D.E. 36.)[1] For the reasons explained below, Defendants' motion is granted in part and denied in part. Specifically, Vazquez's motion to vacate (D.E. 1) is dismissed for lack of subject matter jurisdiction and Vazquez's request for reinstatement to his elected position in Local 10 (D.E. 30 in Case 04-1798 at 39-41) is dismissed as moot. Defendants' motion to strike the First Amended Complaint is denied without prejudice. (D.E. 36 at 1, 4.)

I.      Background

        A.      Factual History

On August 4, 2003, Central States Joint Board ("CSJB") President Mark Spano ("Spano") called Horacio Vazquez ("Vazquez") into his office to discuss some issues, including, but not limited to, the administration of a strike fund for certain workers.[2] (D.E. 30 in Case 04-

---

[1]     Docket entries from Case No. 04 C 861 are designated as "D.E. ___," followed by the appropriate district court docket number. Docket entries from Case No. 04 C 1798 are designated as "D.E. ___ in Case 04-1798."

[2]     The Court presents the facts as stated by Vazquez, but at times, the Court fills in gaps with additional information from the parties' pleadings, as the First Amended Complaint often

1798 ¶ 162; D.E. 11, Ex. D at 6.) After a verbal altercation, Spano uttered some heated expletives and told Vazquez "You're fired! Get out!" (*Id.*; D.E. 30 in Case 04-1798 ¶ 167.) Vazquez maintains that he was terminated for his opposition to Spano's alleged "scheme" to allow organized-crime elements into the CSJB and the Production Workers Union Local No. 10 ("Local 10"). (*Id.* ¶¶ 170-172.) More specifically, Vazquez claims that upon assuming the CSJB presidency in 2002, Spano ousted any union official who opposed his hiring of a number of persons with alleged ties to organized crime or his alleged use of union funds for personal gain. (*Id.* ¶¶ 89-97, 124-131.) Defendants maintain that Spano fired Vazquez for cause. (*See* D.E. 11, Ex. D.)

On August 4, 2003, Vazquez filed a grievance with Spano protesting his discharge. (D.E. 30 in Case 04-1798 ¶ 176.) Spano, acting on behalf of CSJB, denied the grievance eight days later. (*Id.* ¶ 177.) On August 18, 2003, Vazquez sought review of Spano's decision to deny his grievance from a grievance committee pursuant to an arbitration provision ("Paragraph Nine") in Vazquez's employment agreement with CSJB ("Employment Agreement"). (*Id.* ¶ 178.) Paragraph Nine provides that "any dispute arising during the term of this Employment Agreement . . . shall be heard before a three member panel consisting of an Officer of CSJB appointed by CSJB President, the President of Employee's Local Union and another employee or officer of the [CSJB] appointed by Employee." (D.E. 11, Ex. C ¶ 9.) It further says that "[t]he remedy as set forth in this paragraph is the exclusive remedy for . . . any employment related dispute." (*Id.*)

---

lacks factual detail. This additional information is provided for context, but does bear upon the Court's disposition of the motions.

Spano and Vazquez could not reach agreement on the appropriate composition of the panel (*id.* ¶¶ 179-183); Vazquez blames Spano for trying to "stack the deck" (*see id.*), while Defendants maintain that Vazquez was delinquent in picking and notifying his panel representative. (*See* D.E. 11, Ex. D at 2-3.) After he was notified of the panel's composition, Vazquez wrote two letters to Hermes Ruiz ("Ruiz"), the President of the International Union of Allied Novelty & Production Workers (respectively, the "International President" and the "International Union"), encouraging Ruiz to intervene in his dispute with CSJB and Spano. (*Id.* ¶ 184.) On October 15, 2003, prior to Ruiz taking any action, the Executive Board of the International Union ("Executive Board") adopted a motion brought by Spano "that the International [Union] should not become involved in employment disputes between subordinate bodies and their employees." (*Id.* ¶ 185.) Although he had not intervened in Vazquez's dispute with the CSJB and Spano, Ruiz opposed the motion. (D.E. 48 at 12.) Vazquez maintains that this resolution is inconsistent with Article 6, § 7(i) of the International Constitution. (*Id.* at 12-13.)

Spano appointed Messrs. Steve Torello ("Torello") and John McDonough ("McDonough") to the arbitration panel but did not appoint Vazquez or any person designated by Vazquez. (D.E. 30 in Case 04-1798 ¶ 186.) On October 27, 2003, the panel convened to hear Vazquez's discharge grievance. (*Id.* ¶ 187.) At that time, Vazquez requested that the arbitration be stayed, pending a decision on his request to the International Union to intervene in the proceedings. (*Id.* ¶ 191.) When his request for a stay was denied, Vazquez requested that Mr. Jeffrey Keating serve as the third member of the arbitration panel. (*Id.* ¶ 192.) Vazquez maintains that his request was denied. (*Id.* ¶ 193.) Defendants claim that Keating was free to

3

join the panel, but that Vazquez had not previously notified Keating and could not find him; Defendants further assert that Keating was free to join the panel *post hoc* and cast a vote based upon the record. (D.E. 11, Ex. D at 2.) The arbitration panel (consisting of Torello and McDonough) heard testimony from a number of witnesses, including several rank-and-file members who complained of Vazquez's job performance (*see* D.E. 11, Ex. A at 72-101) and other CSJB business agents who echoed the rank-and-file members' complaints. (*See id.* at 40-71.) On November 4, 2003, the arbitration panel issued a written opinion (the "Grievance Committee Report") explaining the bases for its decision to deny Vazquez's grievance and uphold his termination as a CSJB business agent. (*Id.* ¶ 196; *see also* D.E. 11, Ex. D.)

On November 7, 2003, Spano filed charges against Vazquez to remove him as the elected President of Local 10 on the grounds that, following his dismissal as a CSJB business agent, he was no longer a member in good standing of Local 10, and the Local 10 constitution requires elected officers to be members in good standing. (D.E. 30 in Case 04-1798 ¶ 197; *see also* D.E. 11 at 3.) Vazquez maintains that this rationale was pretextual and that the "real reason" for the charges was that Vazquez had spoken in opposition to Spano's alleged scheme to allow organized crime to infiltrate the union. (D.E. 30 in Case 04-1798 ¶ 197.) After the Local 10 Executive Board scheduled a hearing to determine whether Vazquez should be removed from office, Vazquez requested a continuance pending an appeal of his termination and a decision from Ruiz regarding whether he would intervene in the proceedings. (*Id.* ¶¶ 199-200.) Vazquez's request for a continuance was denied, and, after a November 19, 2003 hearing, Vazquez was removed as President. (*Id.* ¶¶ 201, 202, 208.) Although Vazquez's removal was not reviewed by an arbitration panel or a grievance committee, his motion to vacate also seeks to

4

"vacate" his removal as President of Local 10. (D.E. 1 at 7.) In the affidavits attached to his response brief (D.E. 48), Vazquez maintains that his removal was illegal because McDonough sat on the Local 10 Executive Board (*Id.*, Vazquez Aff. ¶ 32) and that Ward impermissibly participated in the hearing. (*Id.* ¶ 33.)[3]

Vazquez was a member of Local 10 prior to November 2003. However, Local 10 no longer exists—it merged with Chemical and Allied Workers Union, Local 20, on June 30, 2004. (D.E. 41, McDonough Aff. ¶¶ 8-10.) The new merged entity is Chemical and Production Workers Local 30 ("Local 30"), and it elected a new slate of officers in 2004. (*Id.* ¶ 10.) Vazquez maintains that the merger was improper under the applicable union constitutions and thus is void. (D.E. 48, Vazquez Aff. ¶ 39.) It does not appear that Vazquez ever was or currently is a member of Local 30.

B.     Procedural History

Horacio Vazquez ("Vazquez" or "Plaintiff") filed two separate actions in the Northern District of Illinois (case numbers 04-C-861 and 04-C-1978) relating to his dispute with the International Union, the CSJB, and Local 10.[4] Vazquez's first action was a motion to vacate an arbitration award—*i.e.*, the Grievance Committee Decision upholding his dismissal as a CSJB business agent. (D.E. 11, Ex. D.) Vazquez's motion also seeks to "vacate" the Executive Board's decision to remove him as President of Local No. 10. Vazquez filed the motion to vacate on February 3, 2004. (D.E. 1.)

---

[3]     The Court takes notice of Defendants objections to the affidavits attached to D.E. 48; however, the Court reserves judgment on the substance of these lengthy affidavits except for where specifically noted later in the opinion.

[4]     On August 18, 2004, the Court consolidated the suits. (D.E. 25.)

Vazquez's second action is a four-count complaint against CSJB, the International Union, and Local 10 alleging that those entities (1) breached certain union governing documents (Counts I, II and IV); and (2) violated the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* (Count III). (D.E. 1 in Case 04-1798.) Vazquez filed the second action on March 8, 2004.

On May 10, 2004, Defendants filed a motion to dismiss both of Vazquez's actions. (D.E. 11.) On January 25, 2005, the Court granted in part and denied in part Defendants' motion to dismiss. In doing so, the Court determined that, in order for the Court to have jurisdiction over the motion to vacate under Section 301 of the Labor Management Relations Act ("§ 301"), 29 U.S.C. § 185, Vazquez would have to demonstrate that an inter-union contract was breached. (D.E. 32 at 14, 28.) While the Court determined that a breach of the CSJB employment manual or the Local 10 constitution did not give rise to jurisdiction under § 301, the Court declined to dismiss the motion to vacate in its entirety because "the gravamen of [Defendants'] motion to dismiss [was] based on sweeping assertions of a jurisdictional bar . . . [that] were not focused on particular aspects of the claims." (*Id.* at 19.)

Vazquez subsequently filed an amended complaint ("First Amended Complaint") in which he added three plaintiffs, Ruiz, Jeffrey Keating ("Keating"), and Kevin Kane ("Kane"), added a number of individual defendants,[5] and dropped Local 10 as a defendant. (*See* D.E. 30 in Case 04-1798.) The crux of the First Amended Complaint is that the four plaintiffs allegedly were forced out of their positions in Local 10 and CSJB "to silence their opposition and chill the

---

[5]     The additional Defendants are Mark Spano, Steve Torello, Benny Castro, Mike Flynn, Frank Olvera, John McDonough, Kathleen Rodriguez, Rocco Miranti, Antonio Patino, Johnny Miranti, William Widmer, John Ward, and Greg Auteri.

6

democratic rights of other members of the Unions and their potential opposition to the entrenched, autocratic, and corrupt union leadership." (*Id.* at 2.) Specifically, the First Amended Complaint reiterates many (but not all) of Vazquez's original allegations; adds similar allegations from Ruiz, Keating, and Kane; and adds a civil RICO claim under the federal Racketeering Influenced and Corrupt Organization Act. (*Id.* at 52-56.)

Defendants now move to strike the First Amended Complaint in its entirety on the theory that if Vazquez has no viable claims, as they contend, he should not be permitted to amend the complaint to include additional parties and counts. (D.E. 41 at 18.) In the alternative, Defendants move to strike any of Vazquez's allegations that are *de facto* collateral attacks on the arbitration proceedings that upheld Vazquez's removal as a CSJB business agent. (D.E. 41 at 1.) Defendants also move to dismiss Vazquez's claims relating to his removal as Local 10's president as moot. (*Id.* at 15.) Defendants' motion does not directly address the civil RICO count or the allegations advanced by the newly-added plaintiffs. (*See generally id.*)

II.     Standard of Review

Rule 12(f) permits a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored when used to delay litigation, but are permissible to the extent they "remove[] unnecessary clutter from the case." *See Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). A district court has broad discretion to grant or deny a motion to strike. *Talbot v. Robert Matthews Distrib. Co.*, 961 F.2d 654, 664-65 (7th Cir. 1992.)

When ruling on a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the court must accept the plaintiff's factual allegations as true and make all reasonable

7

inferences in the plaintiff's favor. *See, e.g., Rueth v. United States Envtl. Prot. Agency*, 13 F.3d 227, 229 (7th Cir. 1993) (citing *Capitol Leasing Co. v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted). "'The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists.'" *Ezekiel v. Michel*, 66 F.3d 894, 897 (quoting *Capitol Leasing Co.*, 999 F.2d at 191 (further internal quotation marks and citations omitted)). A district court must dismiss any action for which the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). A dismissal for want of subject matter jurisdiction "precludes only the relitigation of the grounds of that dismissal and thus has collateral estoppel (issue preclusion) effect rather than the broader res judicata effect that nowadays goes by the name of claim preclusion." *Okoro v. Bohman*, 164 F.3d 1059, 1063 (7th Cir. 1999) (internal punctuation and citations omitted).

"A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of a complaint for failure to state a claim upon which relief may be granted." *Johnson v. Rivera*, 272 F.3d 519, 520-21 (7th Cir. 2001). In ruling on a motion to dismiss, the court must assume all facts alleged in the complaint to be true and view the allegations in the light most favorable to plaintiffs. *See, e.g., Singer v. Pierce & Assocs., P.C.*, 383 F.3d 596, 597 (7th Cir. 2004). Dismissal for failure to state a claim is appropriate where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). The Court has applied the standards articulated above in the adjudication of Defendants' motion.

8

III. Discussion

Defendants' motion is deemed a "motion to strike and suggestion of mootness." Upon

closer review, it appears that Defendants have filed a motion to strike pursuant to Fed. R. Civ. P.

12(f) that is coupled with a renewed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and

12(b)(6). Specifically, Defendants move to: (1) dismiss Vazquez's motion to vacate for lack of

subject matter jurisdiction (D.E. 41 at 5); (2) dismiss the motion to vacate for failure to state a

claim (D.E. 41 at 10); (3) strike the First Amended Complaint in its entirety, or, at a minimum,

all of the allegations that collaterally attack the Grievance Committee Decision (*id.* at 11-14); and

(4) dismiss as moot Vazquez's claim for reinstatement as President of Local 10. (*Id.* at 15.)

A.     Motion to Vacate Arbitration Award

Defendants argue that in light of the Court's January 25, 2005 opinion, there is no

jurisdictional basis for Vazquez's motion to vacate the Grievance Committee Decision. (D.E. 41

at 4.) As the Court previously explained, the applicable provision of the Federal Arbitration Act,

9 U.S.C. § 10 ("FAA § 10"), does not itself support jurisdiction under 28 U.S.C. § 1331 ("§

1331"). (D.E. 32 at 13 (citing *Minor v. Prudential Sec., Inc.*, 94 F.3d 1103, 1104 (7th Cir.

1996).) As a consequence, "[t]here must be an independent basis of federal [subject-matter]

jurisdiction before a district court can entertain a motion to vacate under [Section 10]." *Id.*, 94

F.3d at 1104-1105 (collecting cases). Defendants maintain that neither § 301 nor the LMRDA

supply an "independent" basis for subject matter jurisdiction in the instant matter.[6] (D.E. 41 at

_____

[6]     The motion to vacate identified 9 U.S.C. § 10 (FAA § 10), 29 U.S.C. § 185 (LMRA §
301), 29 U.S.C. §§ 411(a) and 529 (LMRDA §§ 101, 609), and 28 U.S.C. § 1367 ("supplemental
jurisdiction") as supporting jurisdiction over the motion. (D.E. 1 at 1.) The Court has already
determined that 9 U.S.C. § 10 does not give rise to jurisdiction. The supplemental jurisdiction
argument, as presented in the motion, provided no asserted basis for the motion to vacate in a

5.) A short review of FAA § 10 and the relevant caselaw provides context for the jurisdictional determination.

1.    FAA § 10 Background

FAA § 10 identifies four bases for vacating an arbitration award:

(1) where the award was procured by corruption, fraud, or undue means;
(2) where there was evident partiality or corruption in the arbitrators, or either of them;
(3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
(4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)-(4). In addition to those grounds set forth in FAA § 10, some circuits recognize additional bases for vacating an arbitration award: (1) the arbitrator manifestly disregarded the law or (2) enforcement of the arbitration award would violate a well defined and dominant public policy. *See, e.g., Luong v. Circuit City Stores, Inc.*, 368 F.3d 1109, 1111 (9th Cir. 2004). The basis for these exceptions is not altogether clear—many of the cases are challenges to labor arbitration awards in which common law authorized by § 301 applies, *see Stroh Container Co. v. Delphi Indus., Inc.*, 783 F.2d 743, 750 (8th Cir. 1986), yet many courts apply principles from labor law cases to FAA cases without considering the unique status of arbitration in labor-management relations. *See generally Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003) (noting that "most decisions . . . arise from labor relations, where federal common

foundational sense; Vazquez was apparently arguing that, if there was some basis for jurisdiction, the Court could consider the state contract claims as part of the merits determination. (*See* D.E. 1 at 1; *see also id.* ¶ 36(h), 36(i) (state-law bases for overturning arbitral award).) Given that the motion to vacate was filed months before Vazquez filed the complaint in Case No. 04-1798, he certainly did not appear to be arguing that the Court had supplemental jurisdiction over the motion to vacate in Case No. 04-861 via the complaint in Case No. 04-1798.

law applies under [§ 301] and arbitration serves as a substitute for strikes, lockouts, and other strife.")

Of particular relevance here, the Seventh Circuit has sharply limited the extra-statutory grounds for vacating an award pursuant to FAA § 10. Specifically, in *George Watts & Son v. Tiffany & Co.*, 248 F.3d 577 (7th Cir. 2001), the Seventh Circuit undertook a comprehensive review of caselaw in this area and held that an assertion of legal error, even clear legal error, cannot be enough to constitute a putative "manifest disregard of the law." *See id.* at 579 ("A search for either simple or clear legal error cannot be proper."). Instead, "manifest disregard of the law" is limited to a situation where the arbitrator has "direct[ed] the parties to violate the law." *Id.* at 580. In *Butler Manuf. Co. v. United Steelworkers of America*, 336 F.3d 629 (7th Cir. 2003), the Seventh Circuit underscored and reaffirmed this holding, when it stated that *George Watts* "recently clarified that an arbitral decision is in manifest disregard of the law only when the arbitrator's award actually orders the parties to violate the law." *Id.* at 636 (citing *George Watts*, 248 F.3d at 579)). The Court is not aware of a case subsequent to *George Watts* suggesting that an arbitration award can be overturned because an arbitrator erred with respect to or disregarded federal law or because enforcement would be inconsistent with public policy. *See Butler Manuf. Co.*, 336 F.3d at 636 (citation omitted).

In order for a federal court to have jurisdiction over a motion to vacate pursuant to FAA § 10, there must be some "independent" basis for subject matter jurisdiction. The independent jurisdiction over the motion to vacate may be diversity jurisdiction pursuant to 28 U.S.C. § 1332, federal question jurisdiction pursuant to § 1331, or some other source of federal jurisdiction. Consistent with the *Mottley* rule, the independent jurisdictional basis must be evident from the

face of a well-pleaded motion. *See, e.g., Minor*, 94 F.3d at 1105; *see also City of Chicago v. Comcast Cable Holdings, L.L.C.*, 384 F.3d 901, 904-905 (7th Cir. 2004) (discussing well-pleaded complaint rule as applied to Federal Arbitration Act and federal telecommunications law). With respect to § 1331 jurisdiction over a motion to vacate, the federal question must relate to the reasons for vacating the arbitration award, not the subject matter of the underlying arbitration. *See, e.g., Minor*, 94 F.3d at 1106. "Mere incantation of a federal statute does not confer jurisdiction; rather the dispute must actually involve a 'substantial question of federal law.'" *Id.* at 1105 (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983); *Ford v. Hamilton Inv.*, 29 F.3d 255 (6th Cir. 1994)).

2.      Jurisdiction premised upon § 301

Section 301 provides that "[s]uits for violation of contracts between an employer and a labor organization . . . or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Labor union constitutions are contracts covered by this provision; an international union's constitution is a contract between two unions—"the international [union] and its locals." *Korzen v. Local Union 705, Int'l Bhd. of Teamsters*, 75 F.3d 285, 288 (7th Cir. 1996) (collecting cases). Union members, where justified, can sue as third-party beneficiaries under such contracts. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 101 (1991); *see also Korzen*, 75 F.3d at 288. However, not every suit relating to a union-union contract is cognizable under Section 301. *See Franchise Tax Bd.*, 463 U.S. at 25 ("But even under § 301 we have never intimated that any action merely relating to a contract within the coverage of § 301 arises exclusively under that

12

section. For instance, a state battery suit growing out of a violent strike would not arise under §

301 simply because the strike may have been a violation of an employer-union contract.").

Section 301 provides a jurisdictional basis for a suit to vacate an arbitration award, but

precedent teaches that the right to bring such a suit derives from federal common law (authorized

by *Textile Workers Union of America v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957)) rather than

FAA § 10. *See, e.g., Kallen v. District 1199, Nat'l Union of Hosp. & Health Care Employees*,

574 F.2d 723, 725 (2d Cir. 1978) ("[S]ince federal courts indisputably have jurisdiction under

section 301 to enforce a labor arbitration award . . . suits to vacate awards are cognizable under

the same statute."); *see also Teamsters Nat'l Auto. Trans. Ind. Negot. Comm. v. Troha*, 328 F.3d

325, 329-330 (7th Cir. 2003) (discussing how *Lincoln Mills* authorizes federal courts to fashion a

body of common law for the enforcement of contracts on behalf of or against labor organizations

and to provide the necessary legal remedies for enforcing such agreements).

The Court's previous decision left open the possibility that § 301 provided a jurisdictional

basis for Vazquez's motion to vacate. (D.E. 32 at 18-19.) While the Court noted that "it is

unclear what rights Vazquez contends that the International Union's or CSJB's constitution

grants him" (*id.* at 19), the Court declined to dismiss the motion to vacate because "the gravamen

of [Defendants'] motion to dismiss [was] based on sweeping assertions of a jurisdictional bar

(which as explained herein, are rejected) and were not focused on particular aspects of the

claims." (*Id.* at 19.) In the most recent round of briefing, the parties discuss in greater specificity

Vazquez's alleged claims under the International Union's Constitution. Because neither party

was more culpable in couching their arguments in sweeping and generic terms during the last

round of briefing, the Court will address the topic now that it has been the subject of meaningful

13

adversarial exploration.

Vazquez's theory is as follows: he has no right to arbitration under the International

Constitution, but once he was granted arbitration rights as part of his employment relationship

with CSJB, the International Constitutional "guarantees that [he] is entitled to due process

throughout the arbitration process." (D.E. 48 at 10.) Vazquez identifies three provisions of the

International Constitution in support of his theory: Article 3.E; Article 6, § 7(i); and Article 8, §

5.[7] These three provisions read as follows:

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Article 3.E: The Objects of the International Union are . . . to defend and extend democratic institutions and procedures and the civil rights and liberties of its members and all others.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Article 6, § 7(i): The International President, in order to administer the business of the International Union and as International President, shall have the power to interpret the provisions of the International Union Constitution, the Constitution and/or Bylaws of subordinate bodies, and the rules, regulations, policies, practices and lawful orders and decisions of the International Union and to decide grievances and disputes submitted to him by subordinate bodies and members. The International President's judgment or decision thereon shall be effective and binding until and unless reversed or modified by the General Executive.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Article 8, § 5: The International President shall have the authority and power to investigate the affairs of a subordinate body, when, upon information or complaint or when, upon reasonable cause, he finds it necessary to determine whether the affairs of a subordinate body or the activities of any of its officers or members are being conducted in an improper or unconstitutional matter. Pursuant to said authority, he shall have the power, either personally or through a representative selected and designated by him, to investigate and inquire into the manner in which the affairs are administered by the subordinate bodies, their officers or members, and to examine the books, records, papers, accounts, securities, purported agreements or understandings or any other documents in the custody of said subordinate bodies or any officer, official, employee, or member thereof and require personal appearance of any officer, official, employee or member as he, in his judgment, may deem necessary to such investigation or inquiry. In connection therewith, he may employ the services of a Certified Public Accountant or other services as he may deem advisable or necessary. After such investigation or inquiry, the International President shall take such action as he may deem necessary or appropriate, including the temporary suspension of an officer or

---

[7]     Vazquez quotes other provisions of the International Constitution elsewhere in his brief, but not as sources of his purported right to due process.

14

employee pending notice and a hearing to be conducted within thirty (30) days before a designee of the International President. An aggrieved party may appeal, within 15 days, a decision of the designee to the General Executive Board.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

As a threshold matter, Vazquez cannot demonstrate that any of the aforementioned provisions provide him with rights as an *employee* of CSJB. As explained in *Korzen*, "a union constitution regulates the relation between the union and its members, not the union and its employees." *Id.*, 75 F.3d at 289. Vazquez argues that *Korzen* only applies to at-will employees, and that the Seventh Circuit permits an employee to bring "a Section 301 action based on their allegation of termination without good cause." (D.E. 48 at 11.) Vazquez does not cite any language from *Korzen* in support of this novel reading, much less provide a pin cite in support of this proposition. The Court has searched *Korzen* in vain for any suggestion that determination of whether a union constitution governs the employment relationship turns on whether that relationship is contractual or at-will. *Korzen* discusses (in *dicta*) the "nice question" posed by a hypothetical case in which a union has a collective bargaining agreement with its employees and the union serves as both the employer and the collective bargaining representative. *Id.*, 75 F.3d at 290. But this hypothetical is of no use to Vazquez, as this hypothetical situation is not present in the instant case. *Korzen* further makes mention of "some other fixed-term or tenure employment contract," but only for purposes of explaining that the plaintiffs' supplemental claim that they were fired without good cause was meritless because they were at-will employees. *Id.* Consequently, Vazquez's attempt to distinguish *Korzen* is unpersuasive.

Furthermore, even if *Korzen* could be distinguished, the International Union has determined that the President's authority under Article 6, § 7(i) to decide grievances and disputes is limited to grievances and disputes involving union membership rights and does not encompass

15

employment disputes. (D.E. 41 at 7.) Substantial deference is owed this interpretation. *See, e.g.,*

*Air Wisconsin Pilots Protection Committee v. Sanderson*, 909 F.2d 213, 218 (7th Cir. 1990)

(collecting cases and holding that "a union's interpretation of its own constitution, by-laws, and

other promulgations is entitled to judicial deference; we must be able to call the interpretation

unreasonable, perhaps even 'patently unreasonable,' before we can set it aside."); *see also id.*

(explaining that "the reason [for such deference] is to protect the internal affairs of unions from

heavy-handed judicial interference"). This deference appears to exceed that typically afforded to

an agency interpretation of an ambiguous statute. *See, e.g., Chevron U.S.A., Inc. v. Nat'l*

*Resources Defense Council*, 467 U.S. 837, 843-44 (1984) ("[I]f the statute is silent or ambiguous

with respect to the specific issue, the question for the court is whether the agency's answer is

based on a permissible construction of the statute.")

Vazquez maintains that the Executive Board's interpretation of the International

Constitution itself violates the International Constitution because it alters the clear terms of the

document. (D.E. 48 at 12.) Vazquez's argument is based on three questionable premises: (1) the

International Constitution clearly governs the employment relationship between subordinate

unions and its employees, (2) the International Constitution clearly protects due process rights,

and (3) the authority of the International President cannot be restricted by the Executive Board.

*Korzen* teaches that the first premise is incorrect. *See id.*, 75 F.3d at 289 ("[A] union

constitution regulates the relation between the union and its members, not the union and its

employees."). With respect to the second premise, a close reading of the International

Constitution reveals its tenuous foundation. Article 3.E is a statement of organizational goals,

not a delineation of member rights. It is akin to a preamble, which ordinarily does not afford any

16

substantive rights. *See, e.g., Air Wisconsin Pilots Protection Committee*, 909 F.2d at 218 (rejecting claim that union violated its constitution through acts inconsistent with the purposes of the constitution because "preamble-like language in a document intended to set forth general principles rather than exact guidelines" is not actionable). This interpretation is underscored by the fact that the preamble speaks of the union's aspirational goal of extending democracy and promoting democratic institutions for non-members of the union, so it is implausible to think that this language was intended to confer actionable rights to union members as against subordinate bodies. *See generally Treadway v. Gateway Chevrolet Oldsmobile, Inc.*, 362 F.3d 971, 976 (7th Cir. 2004) ("Nonsensical interpretations of contracts, as of statutes, are disfavored . . . not because of a judicial aversion to nonsense as such, but because people are unlikely to make contracts, or legislators statutes, that they believe will have absurd consequences") (quoting *FutureSource L.L.C. v. Reuters Ltd.*, 312 F.3d 281, 284-85 (7th Cir. 2002)). With respect to Vazquez's claim under Article 6, § 7(i), it merely states that the International President "shall have the power," but it does not direct how that power should or may be used. Furthermore, Article 6, § 7(i) itself contemplates that the International President's authority or decisions may be limited or overridden (*i.e.*, by the General Executive), and the Executive Board so acted here. Article 8, § 5 is similarly a discretionary grant of authority that does not cabin the International President's discretion or mandate action. *See generally Heckler v. Chaney*, 470 U.S. 821, 831 (1985) (agency refusal to take enforcement action under a grant of authority typically not judicially reviewable); *see also Lincoln v. Vigil*, 508 U.S. 182, 192-93 (1993) (agency decision to discontinue program funded by lump sum appropriation committed to its discretion and not subject to judicial review). Article 8, § 5 also makes clear that whatever power it confers to the

International President is still cabined by the authority of the Executive Board. Lastly, the third premise is equally faulty—among other provisions, Article 6, § 7(i) affords the Executive Board authority to reverse or modify the International President's decisions or judgments and Article 6, § 10 gives the Executive Board ultimate authority over the International President and the International Constitution. The Executive Board so acted here.

Before moving on, the Court notes that Vazquez, in support of his position, offers affidavit testimony which purports to establish the meaning of the union constitution. (*See, e.g.*, D.E. 48, Keating Aff. ¶¶ 27, 32, 37, 39, 44; *id.*, Ruiz Aff. ¶¶ 17-18, 29, 34; *id.*, Vazquez Aff. ¶¶ 15, 17-18.) It is improper to attempt to establish legal propositions or legal interpretations through affidavit testimony. *See, e.g., Good Shepard Manor Found. v. City of Momence*, 323 F.3d 557, 564 (7th Cir. 2003) (affirming district court's exclusion of proffered expert testimony concerning legal conclusions); *White v. Sundstrand Corp.*, No. 98 C 50070, 2000 WL 713739, *3 (N.D. Ill. May 23, 2000) (striking "any statements" offered by witnesses that constitute "improper legal conclusions"); *Muse v. Int'l Union, et al.*, No. IP 99-1946-C-T/K, 2002 WL 449791 (S.D. Ind. Jan. 29, 2002) (striking affidavit testimony that "merely state[d] legal conclusions" because it was, *inter alia*, "irrelevant"). The Court also notes that certain assertions in the affidavits suggest that the various union entities may have interacted in prior instances in a manner inconsistent with the interpretation of the International's Constitution adopted by the Executive Board of the International—presumably in an attempt to cast doubt on the legitimacy of the interpretation adopted by the Executive Board (*i.e.*, that the International President's authority under Article 6, § 7(i) to decide grievances and disputes is limited to grievances and disputes involving union membership rights and does not encompass employment disputes).

However, Vazquez cites no authority that suggests that the presumptive strong deference owed to a union's interpretation of its own constitutive documents and procedural rules is mitigated by a putative change of practice. Moreover, the Executive Board's interpretation hardly seems unreasonable or even incorrect; in essence, it tracks the Seventh Circuit's reading of analogous language in *Korzen. See id.*, 75 F.3d at 289. Even in the administrative law context, where the notion of judicial deference over agency action is typically far less strong or even applicable than the standard articulated in *Air Wisconsin Pilots Protection Committee*, a change of interpretations is not disabling and is often viewed as within the authority of the implementing agency. *See, e.g., Chevron*, 467 U.S. at 863-64 (1984) ("An initial agency interpretation is not instantly carved in stone. On the contrary, the agency . . . must consider varying interpretations and the wisdom of its policy on an ongoing basis"); *accord Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 639 (7th Cir. 2005) (drawing analogy to *Chevron* when analyzing propriety of ERISA plan administrator's changed interpretation pursuant to broad grant of discretionary authority).[8]

---

[8] The Court further notes that in addition to the improper legal conclusions in the affidavits (of which there are many, and beyond those cited above), the affidavits also contain other impermissible assertions. For example, the affiants also repeatedly attest in conclusory terms to what they believe others "knew" about the "real reason" for certain actions. *(See, e.g.*, D.E. 48, Keating Aff. ¶¶ 36, 43; *id.*, Ruiz Aff. ¶¶ 17, 33; *id.*, Vazquez Aff. ¶¶ 27, 34.) An affiant cannot testify to another person's knowledge, and certainly not in the conclusory and speculative terms offered by Vazquez. *See, e.g., Filippo v. N. Ind. Pub. Serv. Corp.*, 141 F.3d 744, 749 (7th Cir. 1998) (employee's speculation in affidavit that union retaliated against her for running for local union president not sufficient even to create a material factual dispute). The affidavits also contain numerous other conclusory assertions (*see, e.g.*, D.E. 48, Keating Aff. ¶¶ 16; *id.*, Ruiz Aff. ¶¶ 6, 26, 36; *id.*, Vazquez Aff. ¶¶ 7, 27, 37) that are impermissible. *See LINC Fin. Corp. v. Onwuteaka*, 129 F.3d 917, 920 (7th Cir. 1997) (conclusory testimony without foundation impermissible in affidavit); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000) (same).

### 3. Jurisdiction premised upon LMRDA

Vazquez suggests that the LMRDA provides an "independent" basis for challenging the arbitration award under FAA § 10. While the Court previously addressed the viability of Vazquez's LMRDA claims in the context of Rule 12(b)(6) motion to dismiss, the Court did not consider explicitly whether the LMRDA provides an "independent" basis for jurisdiction over a motion to vacate an arbitration award. Vazquez's claim in this respect is vague, but he appears to argue that the reasons asserted for vacating the arbitration award will necessarily involve application and construction of the LMRDA, which satisfies the standard for jurisdiction pursuant to § 1331.

As the Court noted previously, the Seventh Circuit's disavowal of extra-statutory grounds for challenging an arbitration award under FAA § 10 makes it difficult to establish an "independent" basis for jurisdiction under § 1331. This is because the reasons for vacating the award—not the substance of the underlying dispute—have to raise a substantial question of federal law. *See, e.g., Minor*, 94 F.3d at 1106. The cases from other circuits in which § 1331 supports a motion to vacate under FAA § 10 are "manifest disregard" cases. *See, e.g., Luong*, 368 F.3d at 1111-12. However, the Seventh Circuit has taken a narrower view; under Seventh Circuit precedent, a "manifest disregard" case is only one where the arbitrator has ordered a party to violate the law. *See Butler Manuf. Co.*, 336 F.3d at 636 (citing *George Watts*, 248 F.3d at 580).

Vazquez's motion to vacate sounds in FAA § 10 rather than in an "independent" source of law. Vazquez's first objection to the arbitration award is that the panel was improperly constituted and was thus biased against him (*see* D.E. 1 ¶¶ 24(a), (c), (f)); FAA § 10.2 provides

for review in cases of evident partiality or corruption and FAA § 10.3 permits vacating an award when misbehavior by the arbitral panel prejudiced the rights of any party. Vazquez's second objection is that he did not receive proper notice (*see id.* ¶ 24(b)); this is akin to a claim under FAA § 10.3 for prejudicial misconduct. Vazquez's third objection is that the arbitration should have been stayed pending Ruiz's decision (*id.* § 24(d)); this tracks FAA § 10.3, which permits vacating an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing." Vazquez's fourth objection is that the arbitration was not conducted according to procedures set forth in the employee handbook and the Local 10 constitution (D.E. 1 ¶ 24(e), (h)); this objection is based in state contract law and Vazquez admitted as much. (*See id.* at 1.) Finally, Vazquez vaguely asserts that his "contractual rights to due process, free speech, free association and freedom from threats and intimidation" were violated, making the award "illegal, unlawful and not according to federal labor laws." (*Id.* ¶ 24(g).) At its essence, this is the type of extra-statutory objection, *i.e.* manifest disregard of law or contrary to public policy, that the Seventh Circuit has largely disavowed; Vazquez does not maintain that the arbitration panel ordered the parties to violate Section 301, the LMRDA, or any other federal law. *See George Watts*, 248 F.3d at 580. Therefore, there is no jurisdiction presented over the motion to vacate under § 1331 because of an underlying LMRDA claim or issue.[9] Vazquez's "incantation" of a

---

[9]     Neither party (nor the Court's own research) has uncovered a case where LMRDA § 102 was construed in a similar manner to Section 301, *see Kallen v. District 1199, Nat'l Union of Hosp. & Health Care Employees*, 574 F.2d 723, 726 (2d Cir. 1978), such that the LMRDA provides a substantive basis independent of the FAA for enforcing or upending an arbitration award. The cases cited by the Court in deciding that the original Complaint stated a claim under the LMRDA did not involve an agreement between a union employee and the union to submit "employment related disputes" to arbitration. (*See* D.E. 32 at 26-27 (collecting cases).) Moreover, there is caselaw suggesting that the LMRDA should not be used as a vehicle for judicial supervision of a union's internal affairs. *See Gurton v. Arons*, 339 F.2d 371, 375 (2d Cir.

number of labor-law statutes is simply insufficient to support federal jurisdiction over his motion to vacate; the resolution of the motion simply does not turn on a substantial federal question.

4.    Impermissible Collateral Attack

"Whether a particular issue is subject to arbitration is a matter of contract interpretation, because 'a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). Illinois substantive law governs interpretation of the Employment Agreement. (*See* D.E. 11, Ex. C ¶ 12 ("[the agreement] shall be interpreted and enforced according to the statutes and case laws of the State of Illinois")); *see also Doerge*, 328 F.3d at 345 (most disputes about the scope or meaning of an arbitration clause must be resolved under state law.")

An arbitration award may serve as a basis for claim preclusion and issue preclusion in a subsequent case. *See, e.g.*, *Anchor Glass Container Corp. v. Buschmeier*, 426 F.3d 872, 874 (7th Cir. 2005); *accord, e.g.*, Restatement (Second) of Judgments § 84(1). The court applies federal law when determining the preclusive effect of an unconfirmed arbitration award when the court has federal-question jurisdiction over the subsequent suit. *See, e.g.*, *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 324 n.12 (1971). In the Seventh Circuit, claim preclusion applies when there is "(1) [a] judgment on the merits in an earlier action; (2) an identity of the parties or their privies in the two suits; and (3) an identity of the cause of action between both suits." *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995) (collecting

---

1964); *see also Tincher v. Piasecki*, 520 F.2d 851, 854 (7th Cir. 1975). Thus, without further support for this theory being identified, the Court will not presume that the LMRDA implicitly authorizes a suit to vacate an arbitration award.

cases).

Defendants argue that the dismissal of Vazquez's motion to vacate necessitates striking the First Amended Complaint to the extent that he is mounting a collateral attack on the substance of the Grievance Committee's decision (in essence, issue preclusion). (D.E. 41 at 11.) Defendants also argue claim preclusion, in that "Vazquez's failure to raise LMRDA allegations during his arbitration proceeding precludes him from raising those claims now." (*Id.* at 12.)

While Defendants may be correct that portions of the complaint are inconsistent with the Grievance Committee Decision, the motion to strike does not address the majority of the allegations in the First Amended Complaint. Instead of rendering a piecemeal decision on which claims and issues are precluded by the prior arbitration award, the Court finds it more prudent to address the preclusion issues in a comprehensive fashion. This may require additional development of the record; the Court may need further information to determine what issues could have or could not have been presented to the Grievance Committee. For example, the extent of claim and issue preclusion is tied to the contractual agreement to arbitrate, which depends in part upon the expectations of the parties to the agreement. A civil RICO claim may be submitted to arbitration, but only if the parties contracted to do so. *See Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985). Yet it is by no means clear that when the parties agreed to submit all "employment related disputes" to the grievance process that they envisioned that a panel comprised of union officials would adjudicate sweeping claims of union corruption. The LMRDA claims, to the extent they would seek to challenge the result of the arbitration (regarding which, Vazquez has provided no convincing argument concerning this Court's jurisdiction over his motion to vacate), may well be subject to claim and issue preclusion defenses. *See, e.g., Pike*

23

*v. Freeman*, 266 F.3d 78, 89-90 (2d Cir. 2001); *Porush v. Lemire*, 6 F. Supp. 2d 178, 182 (E.D.N.Y. 1998) (collecting cases); *Prudential Securities, Inc. v. Hornsby*, 865 F. Supp. 447, 451-52 (N.D. Ill. 1994).[10]

The Court previously denied Defendants' motion to dismiss because it made "sweeping allegations of a jurisdictional bar"; here, Defendants make sweeping allegations of claim and issue preclusion that cannot be addressed without a greater attention to the particular claims and facts asserted to support the claims in the First Amended Complaint. Accordingly, these issues will need to be resolved upon more comprehensive briefing, perhaps after further development of the factual record.

B.      Reinstatement as Local 10 President

Defendants argue that "Vazquez's claim for improper removal as President of Local 10 . . . [was] rendered moot as a result of Local 10's merger with another local union." (D.E. 36 at 4.) Defendants also note that Vazquez does not have a viable claim for damages because he never received a salary or benefits for his position. (*Id.*; *see also* D.E. 48 at 2 (Plaintiff's acknowledgment that he "only received compensation as a CSJB employee" and not as "Local 10's President").) Vazquez claims that, because the merger violated Art. 6, § 10 of the International Constitution, he could be reinstated as interim president of Local 10 "until an election could be scheduled." (D.E. 48 at 15.)

---

[10]      As noted previously, none of the LMRDA cases from the Court's January 25, 2005 opinion involved an underlying arbitration award. (The Defendants did not earlier argue claim or issue preclusion with regard to the LMRDA claims, as the focus of the briefing was on other subjects). In any future briefing, the parties are respectfully requested to submit whatever authority they locate concerning a dynamic where a stand-alone LMRDA claim would purport to concern an arbitration when the parties address, for example, claim or issue preclusion matters.

A case is moot if events subsequent to the filing of the case resolve the dispute. *See, e.g., Kremens v. Bartley*, 431 U.S. 119, 128 (1977). A case may also be moot if the requested relief cannot be afforded by the court in a case. *See, e.g., DeFunis v. Odegaard*, 416 U.S. 312, 317 (1980) (per curiam). A federal court must dismiss a moot claim because, if a claim no longer matters to the parties, judicial resolution of the matter constitutes an advisory opinion, *see, e.g., SEC v. Medical Comm. For Human Rights*, 404 U.S. 403, 406 (1972), which Article III does not permit. *See, e.g., Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994) (collecting cases).

In his response, Vazquez is apparently attempting to amend the First Amended Complaint to raise a claim under the International Constitution and/or the LMRDA challenging the merger. (*See* D.E. 48 at 15.) However, the First Amended Complaint does not set forth sufficient facts concerning the alleged illegality of the merger—in fact, until the Response Brief, Vazquez makes no reference of the merger between Locals 10 and 20 at all. If a complaint fails to state a claim, the plaintiff cannot attempt to cure the deficiency by including allegations in a pleading that is not either a complaint or an amendment to a complaint. *See Dawson v. General Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992); *see also Thomason v. Nachtrieb*, 888 F.2d 1202, 1205 (7th Cir. 1989); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). Plaintiffs have already filed an amended complaint (D.E. 30 in Case 04-1798)—an amended complaint (*i.e.*, the First Amended Complaint) which dropped Local 10 from the case as a party in apparent recognition of its nonexistence since 2004. So, any request for reinstatement on the operative pleadings (*i.e.*, either the initial Complaint or the First Amended Complaint) is moot and it accordingly is dismissed.

C.   Motion to Strike the First Amended Complaint

Under Fed. R. Civ. P. 15, a party is allowed to amend a pleading once "as a matter of course" or without leave of court within certain time periods: (1) if a responsive pleading is permitted, at any time before a responsive pleading is served; or (2) if the pleading is one to which no responsive pleading is permitted and the case has not been placed on the trial calendar, within 20 days after the pleading is served. Defendants (save for Widmer) have not filed an Answer and motions to dismiss and/or strike are not responsive pleadings. *See Car Carriers*, 745 F.2d at 1111 ("It is well settled in this circuit that a motion to dismiss is not a 'responsive pleading' within the meaning of Rule 15(a)." (citations omitted)). Consequently, the First Amended Complaint is permissible under Rule 15.

IV.   Conclusion

Vazquez's motion to vacate the arbitration award (D.E. 1) is dismissed for lack of subject matter jurisdiction. Vazquez's claim for reinstatement as Local 10 President is dismissed as moot. Plaintiff's allegation that the merger involving Local 10 violated the International Constitution (D.E. 48 at 15) is disregarded and/or stricken for lack of compliance with Fed. R. Civ. P. 15. Defendants' motion to strike the First Amended Complaint in its entirety is denied without prejudice.

So Ordered.

Mark Filip
United States District Judge
Northern District of Illinois

Date:   3-15-06