UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HORACIO VAZQUEZ, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | No. 04 C 1798 |
| v. ) | |
| ) | Judge John W. Darrah |
| CENTRAL STATES JOINT ) | |
| BOARD, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Defendants seek sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

### BACKGROUND

On March 8, 2004, Plaintiff Horacio Vazquez filed a four-count complaint against Defendants Central States Joint Board ("CSJB"), International Union of Allied Novelty & Production Workers ("IUANPW") and Production Workers Union Local No. 10 ("Local 10"), alleging that Defendants had unlawfully fired Vazquez as a CSJB employee and removed him from union office as president of Local 10. The Complaint alleged breach of contract under Illinois law and under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA") and violations of Vazquez's free speech and due process rights under sections 101(a)(1), (2), (5) and 609 of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA").

On February 17, 2005, Vazquez filed a First Amended Complaint ("FAC"), which added Hermes Ruiz, Jeffrey Keating and Kevin Kane as Plaintiffs. The FAC also dropped Local 10

from the case but added as Defendants individual officers comprising the CSJB executive board and the IUANPW executive board as well as the unions' current and former attorneys and accountant. Counts I, II and IV-IX of the FAC alleged violations of sections 101(a)(1), (2), (5) and 609 of the LMRDA. Count XI of the FAC alleged violations of sections 1962(b), (c) and (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.* Counts III and X of the FAC alleged violations of their contractual rights under Illinois law and under section 301 of the LMRA.

On November 9, 2006, Plaintiffs filed a Second Amended Complaint ("SAC"), which asserted the same causes of action as the FAC and added additional allegations related to the civil RICO action in Count XI. Essentially, the SAC alleged that Defendants retaliated against Plaintiffs for Plaintiffs' opposition to Defendant Mark Spano's alleged plan to turn the union over to organized crime.

On March 15, 2007, Defendants filed a motion for sanctions against Plaintiffs. On June 26, 2007, Judge Filip struck the motion for sanctions, as well as two other motions for sanctions filed by individual Defendants no longer parties to this case, without prejudice to refile after the resolution of Defendants' motion to dismiss that was then pending. On February 29, 2008, Judge Filip ruled on Defendants' motion to dismiss Plaintiffs' SAC, granting the motion with respect to some claims and denying it with respect to others. On June 24, 2008, Defendants refiled their motions for sanctions. Before the Court are Defendants' Joint Motion for Sanctions and Defendant Flynn and Rodriguez's Motion for Sanctions. Defendants seek sanctions against Plaintiffs; Plaintiffs' attorney, J. Gordon Banks; Banks' partner, Robert Romero; and the partnership of Romero & Banks.

2

## LEGAL STANDARD

Under Rule 11, a district court "may impose sanctions if a lawsuit is 'not well grounded in fact and is not warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.'" *Cuna Mut. Ins. Soc. v. Office and Professional Employees Intern. Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (*Cuna*) (quoting *Nat'l Wrecking Co. v. Int'l Bd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993) (*Nat'l Wrecking*)). "The court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'" *Cuna*, 443 F.3d at 561 (quoting *Nat'l Wrecking*, 990 F.2d at 963 (citations omitted)). "The central goal of Rule 11 is to deter abusive litigation practices." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388 F.3d 990, 1014 (7th Cir. 2004) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (*Cooter*)).

28 U.S.C. § 1927 provides that an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A court may impose § 1927 sanctions "when an attorney has acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice; pursued a claim that is "without a plausible legal or factual basis and lacking in justification; or pursued a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (*Jolly Group*) (internal quotations and citations omitted). Section 1927 imposes "a continuing duty upon attorneys to dismiss claims that are no longer viable." *Jolly*

3

*Group*, 435 F.3d at 720 (quoting *Dahnke v. Teamsters Local 695*, 906 F.2d 1192, 1201 n. 6 (7th Cir.1990)). Unlike Rule 11, 28 U.S.C. § 1927 provides for sanctions only against individual lawyers, not against law firms. *United Stars Industries, Inc. v. Plastech Engineered Products, Inc.*, 525 F.3d 605, 609 (7th Cir. 2008) (*Plastech*).

## ANALYSIS

### *RICO Claims*

Defendants assert that Plaintiffs' civil RICO claims were frivolous and warrant sanctions under Rule 11 because a reasonable investigation into relevant precedent would have revealed that Plaintiffs lacked standing to bring a RICO cause of action against Defendants. The RICO civil statute, 18 U.S.C. § 1964(c), provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." 18 U.S.C. § 1964(c). Both the phrase "injured to business or property" and the causation requirement, "by reason of," have been interpreted as standing requirements for a RICO claim. *Evans v. City of Chicago*, 434 F.3d 916, 924 (7th Cir. 2006). In the February 29, 2008 ruling on Defendants' motion to dismiss, Judge Filip dismissed the RICO claims for failure to allege either of these standing requirements.

In response to Defendants' motion to dismiss, Plaintiffs argued that they met the RICO injury standing requirement based on injuries to their intangible LMRDA property rights to free speech and democratic participation in their union, resulting from Defendants' attempted extortion of those rights in violation of the Hobbes Act, 18 U.S.C. § 1951, *et seq*. However, in support of their position, Plaintiffs cited only criminal RICO cases, in which the standing

4

requirement is not an issue, and a single unpublished minute order, which Judge Filip found not to be germane, in that it did not address the issue of RICO standing. In finding that Plaintiffs had not met their burden as to either aspect of the standing requirement, Judge Filip stated, "As to these issues, Plaintiffs fail to adduce a single case involving analogous litigants in support of their RICO claims."

Responding to Defendants' motion for sanctions, Plaintiffs point out that their RICO claim was dismissed without prejudice and that Judge Filip stated that "Plaintiffs may be able to locate supportive caselaw in support of their RICO claim." Plaintiffs now claim to have found that supportive caselaw, *Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005), which Plaintiffs claim illustrates a circuit split between the Seventh and Ninth Circuits on the issue of the RICO standing requirements. However, Plaintiffs' newly developed argument in support of their previous position is irrelevant to the issue of sanctions. What matters is whether Plaintiffs made a non-frivolous argument in support of their position at the time they advanced that position – not whether they can find an argument in support of that position after the fact. *See In re Ronco, Inc.*, 838 F.2d 212, 218 (7th Cir. 1988) ("the party against whom sanctions would be imposed must actually make the reasonable argument, not merely assert after-the-fact that a reasonable argument could have been made"); *Terminix Intern. Co., L.P. v. Kay*, 150 F.R.D. 532, 538 (E.D. Pa. 1993) ("it is irrelevant whether counsel can, in retrospect, and upon reflection or further research, distinguish the controlling authority or even make a good faith argument for an extension of the law"). At the time of Plaintiffs' response to the motion to dismiss, they cited to no relevant caselaw in support of their position. Furthermore, while Plaintiffs now claim to have been arguing for a modification of the law, they failed to make this argument in response to the

5

motion to dismiss. Plaintiffs, if they sought to make such an argument then, were under the obligation to recognize existing Seventh Circuit precedent in arguing against it. *See Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1082 (7th Cir. 1987) (arguments that "ignore rather than acknowledge the force of existing law . . . cannot be called an effort to alter the law"). Because Plaintiffs advanced no non-frivolous arguments in support of their RICO claim but instead ignored relevant caselaw, sanctions are appropriate.

*LMRDA Claims*

Defendants next seek sanctions based on Plaintiffs' claims under § 101(a)(1) of the LMRDA. That section provides for equal voting rights within the Union, *Calhoon v. Harvey*, 379 U.S. 134, 139 (1964), and does not apply to the removal from office of union officials, *Lux v. Blackman*, 546 F.2d 713, 716 (7th Cir. 1976). In dismissing these claims with prejudice, Judge Filip stated that Plaintiffs "do not make any serious arguments as to why this right, which on its face is targeted at meetings and elections regarding union-wide issues, should be extended to the context of nominating panel members to hear grievance appeals." In their response to Defendants' motion for sanctions, the Plaintiffs do not dispute this conclusion. Rather, they point out that not all of their claims under the LMRDA were dismissed. However, that fact does nothing to excuse Plaintiffs for pursuing frivolous claims. *See Frantz v. U.S. Powerlifting Federation*, 836 F.2d 1063, 1067 (7th Cir. 1987) ("the inclusion of one sufficient (and adequately investigated) claim does not permit counsel to file a stream of unsubstantiated claims as riders"). Therefore, sanctions are appropriate with respect to Plaintiffs' claims under § 101(a)(1).

Defendants next seek sanctions based on Plaintiffs' claims for violations of § 101(a)(5) and § 609 of the LMRDA, which provide for due process rights in union disciplinary proceedings

and prohibit discipline in retaliation for exercising protected rights. Plaintiffs' arguments in support of these claims do not justify sanctions. It appears that Plaintiffs made good-faith arguments in attempt to distinguish cases opposed to their position and cited caselaw in their favor. In fact, Judge Filip, in dismissing Plaintiffs' claims, acknowledged that at least one judge in the Northern District of Illinois had reached the opposite conclusion, but found other cases more persuasive. Therefore, sanctions will not be awarded with respect to the claims under § 101(a)(5) and § 609.

### Realleged Counts

Defendants next seek sanctions based on their contention that in Counts I, II and III of the SAC, Plaintiffs realleged claims that had been previously dismissed. In Count I of the SAC, Plaintiff Vazquez alleges that Defendants unlawfully removed him from his positions as Business Agent of the CSJB and President of Local 10. Vazquez sought reinstatement to both positions and damages. However, on March 15, 2006, Judge Filip dismissed Vazquez's request for reinstatement as President of Local 10 because Local 10 had merged and was no longer in existence. Thus, while it may have been proper for Vazquez to maintain his claim with respect to his position as Business Agent of the CSJB, Plaintiffs should not have continued to seek relief already held by Judge Filip to be moot. Plaintiffs make no argument as to why this conduct is not sanctionable.

Counts II and III of the SAC allege that Defendants violated Vazquez's rights under the IUANPW constitution in his employment termination proceedings. Judge Filip dismissed these claims, on March 15, 2006, noting that a union constitution governs the relation between a union and its members, not a union and its employees. Nonetheless, Plaintiffs realleged the same

7

claims in the SAC, and the claims were again dismissed in Judge Filip's February 29, 2008 ruling. Again, Plaintiffs make no argument as to why sanctions are not appropriate here. Therefore, sanctions will be awarded for Plaintiffs' reallegations of the previously dismissed claims in Counts I, II and III.

*State-Law Claims*

Defendants next seek sanctions based on Counts III and X of the SAC. In Count III, Vazquez claimed that Defendants Spano, CSJB, IUANPW and the members of IUANPW's executive board breached the CSJB employment manual and the IUANPW constitution in violation of Illinois contract law by discharging Vazquez from CSJB employment. Count X makes the same allegations with respect to Plaintiff Kane. Defendants argue that these claims were frivolous on a number of grounds.

First, Defendants argue that Counts III and X were barred by final and binding arbitration awards. Both Kane and Vazquez were parties to employment contracts requiring arbitration, engaged in arbitration and did not file a timely challenge to the arbitration decisions. Defendants assert that Plaintiffs should be sanctioned for arguing that they should not be bound by the arbitration awards because Defendants breached "implied covenants of good faith and fair dealing" in their employment contracts and because the arbitration procedure was "futile." As Judge Filip noted, Plaintiffs offered no caselaw in support these arguments, nor was the Court able to find any.

Defendants next argue that because both Vazquez and Kane were employed by the CSJB, they had no reasonable basis to bring breach of contract claims against the IUANPW, the members of the IUANPW executive board, or Spano, with whom Vazquez and Kane had no

8

contractual relations. Additionally, Defendants argue that Counts III and X were frivolous to the extent that they were based on breach of the IUANPW constitution because, as noted above, a union constitution does not govern relations between the union and its employees. Finally, Defendants claim that Plaintiffs mischaracterized the nature of their claims in response to Defendants' motion to dismiss Counts III and X.

Plaintiffs' response is two-fold. First, Plaintiffs point out that Judge Filip did not dismiss Count X because Defendants, whose burden it was to prove a binding arbitration agreement, failed to produce a contract signed by Vazquez in which he agreed to arbitrate. Second, Plaintiffs claim to have found, through additional research, a case supporting their position that the arbitration awards could be vacated.

Plaintiffs' arguments are insufficient to avoid sanctions on these counts. First, they have ignored Defendants' assertion that Plaintiffs had no basis to bring claims for breach of contract against the IUANPW, the members of the IUANPW executive board, and Spano. They also fail to respond to Defendants' arguments that as employees, Plaintiffs could not invoke the IUANPW constitution. Furthermore, Plaintiffs' arguments in their defense are not convincing. That Defendants could not produce a signed contract in support of their motion to dismiss has no bearing on whether the legal arguments advanced by Plaintiffs with respect to the binding nature of the arbitration awards were frivolous. Finally, as noted above, that Plaintiffs may have found caselaw in support of their position after the fact has no bearing on whether the unsupported arguments they previously made were sanctionable.

Therefore, sanctions will be awarded against Plaintiffs for pursuing Counts III and X.[1]

*Defendants Flynn and Rodriguez's Motion for Sanctions*

In addition to joining Defendants' joint motion for sanctions, Defendants Flynn and Rodriguez have filed their own separate motion seeking sanctions against Plaintiffs and their attorneys. Flynn and Rodriguez were brought into this case upon the filing of the FAC on February 17, 2005. They were voluntarily dismissed from the case on August 14, 2007. Flynn and Rodriguez argue that neither the FAC nor the SAC "contains a single factual allegation indicating that Flynn or Rodriguez engaged in any substantive act, let alone wrongdoing, affecting any of Plaintiffs' rights under the law." Specifically, Flynn and Rodriguez allege that Plaintiffs brought suit against them despite that neither Flynn nor Rodriguez was a member of the IUANPW executive board at the time of Plaintiffs' termination; that Rodriguez was not a member of the CSJB executive board at any relevant time; and that Plaintiffs knew that neither Flynn nor Rodriguez had any individual involvement with Plaintiffs' termination or removal. In response, Plaintiffs' attorneys argue that: (1) Flynn and Rodriguez were dismissed pursuant to a settlement agreement, (2) the Court lacks jurisdiction to impose sanctions and (3) the SAC did, in fact, contain allegations of wrongdoing against Flynn and Rodriguez.

Plaintiffs first argue that they reached a settlement agreement, pursuant to which Flynn and Rodriguez would be dismissed from the case if they agreed not to seek costs or further pursue their motion for sanctions. Plaintiffs argue that the following chain of events led to the settlement. On March 21, 2007, Flynn and Rodriguez, in conjunction with the other Defendants,

---

[1] However, those sanctions will not be based on Defendants' contention that Plaintiffs mischaracterized the nature of their claims in response to Defendants' motion to dismiss Counts III and X. Defendants' argument on this point was vague and underdeveloped.

10

served Plaintiffs and their attorneys with their draft motion for sanctions. Plaintiffs did not respond. In late April and early May 2007, counsel for Flynn and Rodriguez, Matthew Zubek, had discussions with Plaintiffs' attorney, Banks, about dismissing Flynn and Rodriguez from the case. Briefing of Flynn and Rodriguez's motion to dismiss was ongoing at the time, and Flynn and Rodriguez's reply brief was due on May 4, 2007. On May 1, 2007, Banks sent Zubek an email with a proposed settlement agreement attached. Zubek replied that he could not accept the terms of the proposed settlement agreement. On May 3, 2007, Banks wrote back, asking what terms would be acceptable. Zubek replied by email the same day, stating, "The following would be acceptable to my clients. 'Pursuant to FRCP Rule 41(a) 1, plaintiffs hereby file a notice of dismissal as to all matters pending before the Court as to defendants Mike Flynn and Kathleen Rodriguez.'" Zubek went on to say, "We would agree separately that we would not seek costs. Unless and until I hear otherwise I am operating under the assumption that your clients will find the foregoing unacceptable and still intend to put this before Judge Filip." Zubek did not hear back from Banks, and so, on May 4, 2007, he filed the reply brief. Three months later, on August 3, 2007, before the Court had ruled on the motion to dismiss, Banks filed a motion to voluntarily dismiss Flynn and Rodriguez.

Plaintiffs argue that Zubek's May 3, 2007 email was a settlement offer and that Plaintiffs accepted that offer on August 3, 2007, by voluntarily dismissing Flynn and Rodriguez. Plaintiffs argue that if a contract offer does not include a deadline for acceptance, it will lapse if not accepted only after a reasonable amount of time. Even assuming that Zubek's May 3 email was an open-ended offer of settlement, the three months it took Plaintiffs to accept was far beyond what could be considered a reasonable time. Moreover, briefing of the motion to dismiss was

ongoing. Defendants' reply brief was due the following day, and the Court might have ruled on the motion at any time thereafter. In fact, Zubek stated that he did not expect Plaintiffs to agree to his proposed terms and intended to persist in the motion to dismiss. Thus, the reasonable interpretation of Zubek's May 3, 2007 email is that if Zubek did not receive an acceptance of his offer from Plaintiffs before the May 4, 2007 filing date, the parties had not reached an agreement. Thus, for these reasons, no settlement agreement between the parties shields Plaintiffs from the motion for sanctions.

Plaintiffs next argue that the Court lacks jurisdiction to impose sanctions. Plaintiffs admit that a voluntary dismissal does not divest a court of jurisdiction to consider sanctions pursuant to Rule 11 and 28 U.S.C. § 1927. *See Dunn v. Gull*, 990 F.2d 348, 351 (7th Cir. 1993). However, Plaintiffs argue that the Court lacks jurisdiction because Judge Filip dismissed Flynn and Rodriguez's motion to dismiss as moot. Plaintiffs fail to cite any caselaw or make any reasoned argument in support of this position. The United States Supreme Court has explained, "the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated." *Cooter*, 496 U.S. at 396. Thus, the Court retains jurisdiction on the issue of sanctions.

Finally, Plaintiffs argue that, contrary to Flynn and Rodriguez's contention in their motion for sanctions, the SAC did contain allegations of wrongdoing against Flynn and Rodriguez. Specifically, the SAC identified Flynn as a trustee of the pension plan, identified

Flynn as a member of Spano's group and identified Flynn and Rodriguez as members of the CSJB's executive board, which Plaintiffs alleged participated in the unlawful removal of Vazquez and Keating from their union positions.

Plaintiffs' first allegation, that Flynn was a trustee of the pension plan relates to Plaintiff Keating's claim under § 101(a)(5) and § 609 of the LMRDA that he was removed from his position as plan manager of the pension fund. As Judge Filip held, the LMRDA claim is not cognizable when it is the employer rather than the union that disciplines a union member. However, as discussed above, Plaintiffs' argument on this point was not sanctionable.

Plaintiffs' next allegation, that Flynn was a member of Spano's group, relates to Plaintiffs' RICO claims. As discussed above, Plaintiffs' RICO allegations were meritless and sanctionable. Thus, this claim does not imply liability on the part of Flynn.

Finally, Plaintiffs point to their allegation that Flynn and Rodriguez were members of the CSJB's executive board. However, Plaintiffs have failed to show how this leads to liability. Defendants claim, and Plaintiffs have not disagreed, that Rodriguez was not on the CSJB executive board at the time Vazquez and Keating were removed from their positions. Furthermore, Vazquez and Keating were removed from their union positions by the Local 10 executive board and the IUANPW executive board, respectively, not by the CSJB executive board. Thus, membership on the CSJB executive board could not lead to liability for Flynn or Rodriguez.

Plaintiffs maintained a baseless suit against Flynn and Rodriguez for over two-and-a-half years. Reasonable investigation into the facts and law of the case should have made Plaintiffs aware that their claims were baseless. Therefore, sanctions are appropriate with respect to Plaintiffs' suit against Flynn and Rodriguez.[2]

*Partnership Liability*

The parties dispute the liability of Robert Romero, the former law partner of Banks in the partnership of Romero & Banks. As an initial matter, 28 U.S.C. § 1927 provides for sanctions only against individual attorneys, not against firms. *Plastech*, 525 F.3d at 609. Thus, only Banks can be liable under § 1927. Rule 11 provides that "[a]bsent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee." Fed. R. Civ. P. 11(c)(1).

Banks and Romero argue that exceptional circumstances exist in this case. They claim, and Defendants do not dispute, that Romero had no involvement whatsoever in this case. According to Banks' affidavit, the law firm of Romero & Banks was a partnership in name only, and the two lawyers essentially functioned as solo-practitioners. The firm was dissolved in February 2006, nine months before the SAC was filed. When Romero was served with the motion for sanctions in April 2007, he asked Banks to dismiss the case. Romero also sent Plaintiffs a letter within the Rule 11 twenty-one-day safe harbor period stating that he would dismiss the case if he had the ability to do so.

---

[2]Because the Court has determined that Plaintiff Keating's claim under § 101(a)(5) and § 609 of the LMRDA against Flynn was not sanctionable, no sanctions will be imposed with respect to that claim.

Sanctions against Romero, in any form, are not appropriate in these circumstances. Romero had no involvement in the sanctionable conduct and did everything in his power to resolve the issue. Therefore, only Banks will be sanctioned. To rule otherwise would frustrate the purpose and protection of the safe harbor provision as to Romero, who took all steps possible to comply with Rule 11's requirements.

## CONCLUSION

For the foregoing reasons, Defendants' joint motion for sanctions is granted in part and denied in part. Defendants Flynn and Rodriguez's motion for sanctions is granted in part and denied in part.

Dated: March 3, 2009

JOHN W. DARRAH
United States District Court Judge