# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HORACIO VAZQUEZ, HERMES RUIZ, )
JEFFREY KEATING AND KEVIN KANE, )
)
    Plaintiffs, )
) No. 04 C 1798
vs. )
) District Judge Darrah
)
) Magistrate Judge Schenkier
CENTRAL STATES JOINT BOARD, *et al.* )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This case arises out of a bitter dispute between plaintiffs and the defendant unions of which they were members and held various appointed and elected positions. Plaintiffs assert various claims against the Central States Joint Board ("CSJB") and members of its Executive Board; the International Union and its Executive Board, and Mark Spano, who held a number of union positions including that of President of both the International Union and the CSJB Executive Board. As narrowed by an earlier ruling on a motion to dismiss (doc. # 230), all plaintiffs assert claims for violations of their rights to free speech under the Labor Management Relations and Disclosure Act ("LMRDA"), 29 U.S.C. § 411(a)(2), and three of the plaintiffs (Messrs. Ruiz, Keating and Kane) also assert claims for their expulsion from union membership, which they claim violated the LMRDA, 29 U.S.C. §§ 411(a)(5)(C) and 529.

The motion presently pending before the Court raises the question of whether plaintiffs should be allowed to depose John J. Ward, who is one of the counsel of record for the defendant unions. Plaintiffs have subpoenaed Mr. Ward to appear for deposition, and both the defendant

unions and Mr. Ward have moved to quash the deposition subpoena (doc. ## 386, 392). For the reasons that follow, the motion is granted.

I.

While the Rules of Civil Procedure do not create "a blanket immunity that exempts attorneys from ever being deposed," it is widely recognized that depositions of opposing counsel "provide[] a unique opportunity for harassment; it disrupts the opposing attorney's preparation for trial, and could ultimately lead to disqualification of opposing counsel if the attorney is called as a trial witness." *Prevue Pet Products v. Avian Adventures*, 200 F.R.D. 413, 418 (N.D. Ill. 2001) (quotation and citations omitted). As this Court observed in *Prevue*, those considerations led the Eighth Circuit in *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987), to state that as a rule, depositions of opposing counsel "should be limited to where the party seeking to take the depositions has shown that (1) no other means exist to obtain the information than to depose opposing counsel, . . .; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Prevue*, 200 F.R.D. at 418.

In *Prevue*, this Court adopted the *Shelton* approach to determining whether to permit the deposition of opposing counsel – as have many other courts in this district. However, plaintiffs argue that *Shelton* should not apply here because although Mr. Ward is counsel of record, he will not serve as trial counsel for any of the defendants. Plaintiffs contend that in *Pamida, Inc. v. E.S. Originals, Inc.*, 281 F.3d 726 (8th Cir. 2002), the Eight Circuit limited *Shelton* to those situations where there is an attempt to depose opposing trial counsel (Pls.' Resp. at 2-3).

In *Pamida*, plaintiff brought suit against Dynasty and others seeking indemnification in connection with an earlier patent infringement suit that Maxwell had brought against Pamida.

Pamida chose to employ the same attorneys in the indemnification action who represented Pamida in the patent infringement case: the law firm of Larkin, Hoffman, Daley & Lingren, Ltd. ("LHDL"). The underlying patent infringement suit ultimately settled, with Pamida paying its attorneys $750,000.00 to defend and paying Maxwell $475,000.00 (plus a royalty on future sales) to settle that suit. In the indemnification case, Dynasty served subpoenas on five LHDL attorneys, seeking their testimony and related documents concerning, among other things, what actions Pamida took to give Dynasty notice of the patent infringement suit brought by Maxwell, Pamida's claim for indemnity, and the reasonableness of the expenditure of $750,000.00 in attorneys' fees to defend the underlying suit.

Pamida and the LHDL attorneys filed a motion for protective order seeking to quash the subpoenas. The trial court granted the motion to quash with respect to any testimony and documents concerning the indemnification action, but denied the motion to quash with respect to testimony and documents concerning the underlying patent infringement suit. On review, the Eighth Circuit affirmed, holding that the trial court "properly applied *Shelton* to the pending indemnification case," and also properly ruled that *Shelton* "does not apply to the concluded patent infringement action." *Pamida*, 281 F.3d at 730.

The appeals court explained that the rule announced in *Shelton* was intended "to protect against the ills of deposing opposing counsel in a pending case which could potentially lead to disclosure of the attorney's litigation strategy," by creating "a barrier to protect trial attorneys from these depositions." *Id.* The court further explained that *Shelton* "was not intended to provide heightened protection to attorneys who represented a client in a completed case and then also happened to represent that same client in a pending case where the information known only by the

3

attorneys regarding the prior concluded case was crucial." *Id.* The appeals court stated that the information Dynasty sought focused primarily on the concluded patent infringement case and not on the pending indemnification case. The court reasoned that, as a result, the "concerns raised in *Shelton* regarding abuse of the discovery process and adding time and expense to litigation are not implicated in this case where Dynasty seeks relevant information uniquely known by Pamida's attorneys about prior terminated litigation, the substance of which is central to the pending case." *Id.* at 731.

We do not read *Pamida* as taking plaintiffs' attempt to depose Mr. Ward outside of the *Shelton* rule that we adopted in *Prevue*. We recognize that in *Pamida*, the appeals court referred to the *Shelton* test as protecting "trial attorneys from these depositions," *Pamida*, 281 F.3d at 730, and that there appears to be no dispute that Mr. Ward will not act as trial counsel in this case. However, the deposition subpoenas at issue in *Pamida* were directed to five attorneys of record for LHDL, and there is no indication in the opinion that all five of them intended to act as trial counsel. Aside from that point, we question the validity of drawing a bright-line distinction between trial counsel and other counsel of record for purposes of the *Shelton* test. We agree that when the proposed deponent is a counsel of record other than trial counsel, the specter of possible disqualification is not generally an issue. But, concerns about the disclosure of litigation strategy apply not just to depositions of trial counsel but also to depositions of other counsel of record, who work closely on the case with trial counsel and who are privy to the client's trial strategy. And, concerns about "adding time and expense to litigation," *Pamida*, 281 F.3d at 731, apply with equal force to depositions of trial counsel and to depositions of other counsel of record, when the information is available from other sources. For these reasons, to the extent that the *Pamida* court intended to announce as a hard and fast rule

4

that *Shelton* cannot apply to depositions of counsel of record who are not trial counsel, with respect we do not find *Pamida* persuasive on that point.

Moreover, we do not consider the distinction between trial counsel and other counsel of record to be the pivotal point that drove the *Pamida* decision. The court's comments in *Pamida* lead us to conclude that other considerations were central to the decision. *First*, the appeals court emphasized that the information sought by Dynasty from the LHDL attorneys was not with respect to the pending litigation, but rather with respect to litigation that already had been concluded. A principal concern expressed in *Shelton* – avoiding the disclosure of litigation strategy – has little if any weight when the subject of the deposition is concluded litigation. *Second*, the *Pamida* court twice commented that the information sought by Dynasty was "crucial" or "central" to the pending case. *Pamida*, 281 F.3d at 730, 731. *Third*, the court stated that the depositions of opposing counsel may have been "the only realistically available approach" to getting that crucial information, which was "relevant information uniquely known by Pamida's attorneys." *Id.* at 731.

In our judgment, *Pamida* does not reflect so much a limitation of *Shelton* as it does a decision, based on the facts presented in that case, that the concerns the *Shelton* rule seeks to address were not present. With respect to the concluded case, the appeals court found no error in allowing defense to depose the LHDL attorneys, where the evidence sought was not only relevant but crucial to the case and could not be obtained by other means. That analysis is not meaningfully different from the *Shelton* formulation for when opposing counsel may be deposed. We therefore will consider the pending motions to quash using the factors set forth in *Shelton*.[1]

---

[1] We have considered other authorities relied on by plaintiffs, including two decisions from this district, and do not find them persuasive on the issue of whether the *Shelton* analysis should apply here. In *aaiPharma, Inc. v. Kremers Urban Development Co.*, 361 F.Supp. 770, 774-75 (N.D. Ill. 2005), the court denied motions to quash defendant's

5

## II.

We now consider whether plaintiffs should be allowed to depose Mr. Ward. In so doing, we begin by examining the allegations of the second amended complaint as they pertain to Mr. Ward. Plaintiffs allege that when Mr. Spano became President of the CSJB in 2002, he embarked on a scheme "to assert autocratic control over the Unions, eliminate any opposition to his authority, . . . eliminate democracy within the Unions, and to turn the Unions over to elements of organized crime" (Second Amended Complaint ("SAC") ¶ 89). Plaintiffs assert that Mr. Spano recruited Mr. Ward (and others) to assist him in that alleged scheme (*Id.*, ¶ 111). More specifically, plaintiffs allege that Mr. Ward: (1) advised that a proposal by Mr. Spano's wife to mail certain materials to CSJB members was appropriate, when in fact it constituted a prohibited transaction (SAC ¶¶ 123-24, 156); (2) altered minutes of the Health Fund to eliminate reference to certain matters that would show improper action by Mr. Spano (*Id.*, ¶¶ 130-32, 138-40); (3) conspired with Mr. Spano to deprive Mr. Vazquez of due process during an arbitration proceeding and subsequent hearing before the Local 10 Executive Board, which resulted in Mr. Vazquez's removal from the presidency of Local 10 (*Id.*, ¶¶ 175, 192-93, 197-205); (4) assisted Mr. Spano in preventing Mr. Kane from receiving due process in the arbitration proceeding challenging his layoff as business agent for the CSJB (*Id.*, ¶ 219); and (5) assisted Mr. Spano in depriving Messrs. Ruiz, Keating and

---

subpoena of plaintiff's trial counsel. At the threshold, the court noted that plaintiff and the lawyers had waived their argument that *Shelton* should apply by failing to raise the argument until the reply brief. *Id.* at 774-75. The court also found the *Pamida* decision particularly relevant because the discovery defendants sought from the lawyers concerned the lawyers' "representation of AAI regarding the prosecution of the patents in suit, and not about the underlying litigation." *Id.* at 775. That fact pattern is not present here. In *qad.inc. v. ALN Associates, Inc.*, 132 F.R.D. 492, 494-9 (N.D. Ill. 1990), the court expressed disagreement with the *Shelton* standard for deposing opposing counsel. In so doing, however, the court allowed that a deposition of opposing counsel may be barred where "it is really true that information may be derived at least as readily from a source other than the lawyer." *Id.* at 495. As we will explain below, that is the case here.

6

Kane of due process in connection with their removal from elected positions with the Funds and from union membership (*Id.*, ¶¶ 257, 263).

We note that Mr. Ward was named as a defendant in the second amended complaint, but not on the LMRDA claims that remain before the Court. He was named as a defendant only on a claim brought under the Racketeering Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1962(c) & (d) and 1964(c). The RICO claim was dismissed (doc. # 230: Mem. Op. and Order at 34-47). In a subsequent agreed order entered on August 15, 2008 (doc. # 282), the district judge entered final judgment in favor of Mr. Ward and against plaintiffs. Thus, plaintiffs cannot claim that they need Mr. Ward's testimony in order to pursue a claim against him as a defendant; rather, they seek his testimony to advance their claims that other persons and entities violated their rights.

It is against this backdrop that we consider whether a deposition of Mr. Ward is calculated to provide non-privileged and relevant (indeed, critical) information that is not available elsewhere. In their response, plaintiffs identify three general subject matter areas for Mr. Ward's deposition that they claim fits that bill.

*First*, plaintiffs wish to elicit from Mr. Ward testimony concerning the "infrastructure and employee dealings behind the organizations and employees of both Unions" (Pls.' Resp. at 4). Plaintiffs offer no explanation of why this information is crucial (much less relevant) to their claims, or why it is not available from a number of other witnesses. Indeed, plaintiffs themselves, who held high level positions with the unions, should be fully capable of providing testimony on this subject.

*Second*, plaintiffs seek to depose Mr. Ward about "complaints that Plaintiffs made regarding certain actions taken by individual Defendant Spano," as well as their complaints about Mr. Ward's advice and the alleged alteration of meeting minutes (Pls.' Resp. at 4). We accept the potential

relevance of these inquiries. Moreover, in previous rulings on assertions of privilege by the Unions and the Funds, we held that certain documents bearing on these subjects are not privileged. Thus, while much of what Mr. Ward knows may be subject to privilege, he would have some non-privileged information to offer on this proposed subject. But, we are not persuaded that Mr. Ward's testimony is crucial to plaintiffs' claims against others (recalling that they have no claims against Mr. Ward himself), or that the information is not available from other sources. Certainly, plaintiffs can testify as to the complaints that they made to or about Mr. Ward, and his alleged lack of responsiveness to those complaints. And, if Mr. Ward does not sit for deposition, he surely cannot testify at trial – thus, at trial defendants would be unable to offer Mr. Ward to contradict plaintiffs' versions of any conversations they had with him. While plaintiffs speculate that Mr. Ward's deposition may result in testimony "to support Plaintiffs' contention that Defendant has drummed up false charges against Plaintiffs in furtherance of their scheme to wrongfully terminate them in violation of their contract" (Pls.' Resp. at 4), we are unwilling to authorize the deposition of opposing counsel on the basis of that kind of speculation.

*Third*, plaintiffs say they wish to depose Mr. Ward in an attempt to elicit information to support their claim that the "arbitrations held previously to determine "good cause" for plaintiffs' terminations were really nothing more than a sham" (Pls.' Resp. at 4). Plaintiffs say that in particular, they wish to explore Mr. Ward's role in appointing arbitrators to hear the grievances and his role at the hearings (*Id*. at 4-5). Even assuming the relevance of these inquiries, other factors set forth in *Shelton* weigh against permitting the deposition. For example, there are many sources of information about what transpired at the hearings – not to mention a record of those proceedings. Mr. Ward is far from the exclusive source of that information. Likewise, the identity of the

8

arbitrators is known, and plaintiffs have not sufficiently explained why Mr. Ward is the sole source of information about their backgrounds, qualifications, or biases that they may have brought to the proceedings (such as, for example, any pre-existing relationship they may have had with Mr. Spano).

We also are concerned that some of the areas of inquiry proposed by plaintiffs would raise serious questions of intrusion into attorney-client privileged information. The fact that a witness (including an attorney) may have privileged information does not automatically preclude that witness from being deposed. But, under the *Shelton* test, it is a factor that we consider. Where, as here, the information that plaintiffs seek is available elsewhere, we see no good reason to venture into the privilege thicket by authorizing the deposition of opposing counsel.

In closing, we note that our discussion has presumed that defendants have no intention of using Mr. Ward as a witness. Surely, defendants must pay that price if Mr. Ward is to be shielded from deposition: they cannot protect him from deposition during the pretrial phase, only to offer him as a witness at trial. That said, so that there is no possible confusion about the matter, we make explicit what otherwise would be implicit. We will quash the deposition subpoena to Mr. Ward, so long as defendants file a stipulation that they will not offer Mr. Ward's testimony for any purpose on summary judgment or at trial. Defendants shall file that stipulation by June 8, 2009. In the event that defendants choose not to provide that stipulation, plaintiffs then will be permitted to depose Mr. Ward on the foregoing general subjects other than the infrastructure and employee dealings behind the organizations and employees of the Unions.

## CONCLUSION

We grant the motions to quash the deposition subpoena to Mr. Ward (doc. ## 386, 392). We do so on the condition that by June 8, 2009, defendants file a stipulation that they will not call Mr. Ward to testify at trial for any purpose and will not offer an affidavit or declaration from him in connection with any summary judgment motion. If defendants fail to provide that stipulation, then we will authorize the deposition of Mr. Ward on the following matters: (1) complaints that plaintiffs made concerning certain actions by Mr. Spano, complaints about certain advice that Mr. Ward provided about the alleged improper alteration of meeting minutes, and Mr. Ward's actions (or non-actions) in response to those complaints; and (2) Mr. Ward's role concerning the appointment of certain arbitrators to serve on the panel that heard plaintiffs' grievances and his role at the arbitration hearings. In the event that a deposition proceeds, defendants will be entitled to make any legitimate objections to questions that invade the attorney-client privilege between Mr. Ward and the Unions or the Funds.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: June 1, 2009